# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# BIG STONE GAP DIVISION

| | | |
|---|---|---|
| **NANCY G. WRIGHT,** )<br>     Plaintiff ) <br> ) | | |
| v. ) <br> ) <br> ) <br> ) | Civil Action No. 2:08cv00005 <br> **MEMORANDUM OPINION** | |
| **MICHAEL J. ASTRUE,** ) <br>  **Commissioner of Social Security,** ) <br>     Defendant ) | By: | PAMELA MEADE SARGENT <br> United States Magistrate Judge |

In this social security case, I vacate the final decision of the Commissioner denying benefits and remand the case to the Commissioner for further consideration consistent with this Memorandum Opinion.

## *I. Background and Standard of Review*

Plaintiff, Nancy G. Wright, filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), denying plaintiff's claims for supplemental security income, ("SSI"), and disability insurance benefits, ("DIB"), under the Social Security Act, as amended, ("Act"), 42 U.S.C.A. § 423 and § 1381 *et seq.* (West 2003 & Supp. 2008). Jurisdiction of this court is pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). This case is before the undersigned magistrate judge upon transfer pursuant to the consent of the parties under 28 U.S.C. § 636(c)(1).

The court's review in this case is limited to determining if the factual findings

-1-

of the Commissioner are supported by substantial evidence and were reached through application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1966). "'If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

The record shows that Wright protectively filed her applications for SSI and DIB on or about July 27, 2005, alleging disability as of November 3, 2004, based on breast cancer, bone pain, swelling in arms and hands, anxiety and depression. (Record, ("R."), at 60, 72-74, 92, 111, 119, 350-53.) The claims were denied initially and on reconsideration. (R. at 43-45, 49, 52-54, 356-58.) Wright then requested a hearing before an administrative law judge, ("ALJ"). (R. at 55.) The ALJ held a hearing on October 24, 2006, at which Wright was represented by counsel. (R. at 361-402.)

By decision dated November 7, 2006, the ALJ denied Wright's claims. (R. at 17-26.) The ALJ found that Wright met the nondisability insured status requirements of the Act for DIB purposes through December 31, 2009. (R. at 19.) The ALJ found that Wright had not engaged in substantial gainful activity since November 3, 2004. (R. at 19.) The ALJ found that the medical evidence established that Wright had severe impairments, namely status-post mastectomy, chest wall pain, gastroesophageal

reflux disease, osteoarthritis, depression, anxiety and a history of breast cancer, but she found that Wright's impairments did not meet or medically equal the requirements of any impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 19, 21.) The ALJ also found that Wright had the residual functional capacity to perform simple light[1] work that did not require repetitive use of her upper extremities or working with the public and which allowed good access to a bathroom for unscheduled bathroom breaks. (R. at 22.) Thus, the ALJ found that Wright could not perform her past relevant work. (R. at 24.) Based on Wright's age, education, work experience and residual functional capacity and the testimony of a vocational expert, the ALJ concluded that Wright could perform jobs existing in significant numbers in the national economy, including those of a file clerk, a general office clerk and an inspector. (R. at 25.) Therefore, the ALJ found that Wright was not under a disability as defined in the Act and that she was not eligible for benefits. (R. at 25-26.) *See* 20 C.F.R. §§ 404.1520(g), 416.920(g) (2008).

After the ALJ issued her decision, Wright pursued her administrative appeals, (R. at 13), but the Appeals Council denied her request for review. (R. at 6-10.) Wright then filed this action seeking review of the ALJ's unfavorable decision, which now stands as the Commissioner's final decision. *See* 20 C.F.R. §§ 404.981, 416.1481 (2008). The case is before this court on Wright's motion for summary judgment filed June 20, 2008, and on the Commissioner's motion for summary judgment filed August 12, 2008.

---

[1]Light work involves lifting items weighing up to 20 pounds at a time with frequent lifting or carrying of items weighing up to 10 pounds. If someone can perform light work, she also can perform sedentary work. *See* 20 C.F.R. §§ 404.1567(b), 416.967(b) (2008).

## II. Facts

Wright was born in 1971, (R. at 72), which classifies her as a "younger person" under 20 C.F.R. §§ 404.1563(c), 416.963(c). She has a high school education with two years of college instruction, as well as a training as a mine electrician. (R. at 117.) Wright has past work experience as an electrician in a coal mine, a construction worker and an accounting clerk. (R. at 103, 366-67.)

James Williams, a vocational expert, also was present and testified at Wright's hearing. (R. at 393-401.) Williams classified Wright's past work as an accounting clerk as sedentary[2] and skilled, her work as a coal miner as medium[3] and semiskilled and her work as a mine electrician as medium and skilled. (R. at 395.) Williams stated that Wright did not have any transferable skills for less than medium exertion. (R. at 395.) Williams was asked to assume a hypothetical individual of Wright's age, education and work history who could perform simple, noncomplex light work, but who could not use her right arm for repetitive pushing and pulling or overhead lifting, who could only occasionally climb, balance, kneel, crouch, crawl or stoop, that did not require her to work in a public setting and allowed good access to a bathroom. (R. at

---

[2]Sedentary work involves lifting items weighing up to 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing often is necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. *See* 20 C.F.R. §§ 404.1567(a), 416.967(a) (2008).

[3]Medium work involves lifting items weighing up to 50 pounds at a time with frequent lifting or carrying of items weighing up to 25 pounds. If someone can perform medium work, she also can perform light and sedentary work. *See* 20 C.F.R. §§ 404.1567(c), 416.967(c) (2008).

-4-

Case 2:08-cv-00005-PMS   Document 22   Filed 09/30/08   Page 4 of 15   Pageid#: 73

396.) Williams testified that such an individual could perform jobs existing in significant numbers in the national economy, including those of a watch guard, a general office clerk, an inspector and various cleaning jobs. (R. at 397-98.) Williams was then asked to consider the same hypothetical individual, but with the restrictions imposed by Susan G. Myers, a licensed clinical social worker, and Dr. Mark M. Taylor, M.D. (R. at 341-42, 348-49, 401.) Williams testified that such an individual could not perform the enumerated jobs. (R. at 401.)

In rendering his decision, the ALJ reviewed records from Dr. Luciano D. Amato, M.D.; Norton Community Hospital; Dr. Mark M. Taylor, M.D.; Susan G. Myers, L.C.S.W., a licensed clinical social worker; Surgical Associates of Kingsport; Lonesome Pine Hospital; Medical Associates of Southwest Virginia; Dr. Sam W. Huddleston IV, M.D.; Dr. Michael J. Hartman, M.D., a state agency physician; Dr. Robert O. McGuffin, M.D., a state agency physician; Julie Jennings, Ph.D., a state agency psychologist; and R. J. Milan Jr., Ph.D., a state agency psychologist. Wright's counsel submitted additional records from Dr. Taylor to the Appeals Council.[4]

On December 4, 2003, Wright underwent nerve conduction study of the right median and ulnar nerves, which was normal. (R. at 140.) Wright alleges that she became disabled on November 3, 2004, the date that she underwent a bilateral mastectomy and breast reconstruction for recurrent breast cancer. (R. at 112, 195-203.) She had a history of breast cancer for which she had undergone a lumpectomy

---

[4]Since the Appeals Council considered this evidence in reaching its decision not to grant review, (R. at 6-10), this court also should consider this evidence in determining whether substantial evidence supports the ALJ's findings. *See Wilkins v. Sec'y of Dep't of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991).

and chemotherapy in 1999. (R. at 189, 195.) A mammogram and ultrasound performed in September 2004 showed recurrent right breast cancer. (R. at 189-90.) A follow-up visit in December 2004 showed no evidence of cancer. (R. at 166-68.) Wright underwent placement of a Port-A-Cath to prepare for chemotherapy treatment. (R. at 147, 193-94.) In January 2005, Wright reported that she had been doing well with the chemotherapy. (R. at 146.) She had no evidence of any fluid collections. (R. at 146.) She had good range of motion in her shoulders and no lymphedema in her extremities. (R. at 146.) Wright underwent additional surgery on May 11, 2005, for placement of bilateral silicone breast implants. (R. at 191-92, 252-56.) She underwent a total body nuclear bone scan on June 13, 2005, which was normal. (R. at 172.) Wright underwent reconstructive surgery on June 29, 2005. (R. at 238.) Subsequent progress notes show that her wounds were healing and that she was doing well. (R. at 306-09.)

On September 10, 2004, Wright saw Dr. Mark M. Taylor, M.D., for complaints of arthralgia and arthritis pain in her hands and knees. (R. at 293-94.) She had occasional right upper extremity lymphedema,[5] but Dr. Taylor did not view it as severe. (R. at 293.) Dr. Taylor diagnosed arthralgia, osteoarthritis, gastroesphageal reflux disease and mild lymphedema of the right upper extremity, and he prescribed conservative treatment for her arthritis. (R. at 294.) In December 2004, Wright complained of discomfort and pain following breast surgery. (R. at 289.) Dr. Taylor reported that, overall, Wright had done very well. (R. at 289.) Wright also experienced

---

[5]Lymphedema is chronic unilateral or bilateral edema of the extremities due to accumulation of interstitial fluid as a result of stasis of lymph, which is secondary to obstruction of lymph vessels or disorders of the lymph nodes. *See* DORLAND'S ILLUSTRATED MEDICAL DICTIONARY, ("Dorland's"), 962 (27th ed. 1988.)

bone aches and nausea following chemotherapy, but reported that this was well treated with Percocet and Phenergan. (R. at 288.) In December 2004, Wright reported some depression. (R. at 286.) Subsequent progress notes from May and June 2005 show complaints of headaches and bone pain while undergoing chemotherapy, but gross examination was completely normal. (R. at 284-85.)

On August 11, 2005, Wright had completed her cancer treatment, but she reported significant, global bone pain, primarily in her back and legs. (R. at 283.) Examination showed global tenderness, but no gross defects. (R. at 283.) Dr. Taylor reported that Wright was disabled from any and all gainful employment at that time following surgery, and that unrelenting pain affected her quality of life. (R. at 283.) He further reported, however, that the rest of Wright's examination was negative, that she was very pleasant and cooperative, and that she appeared to be grossly uncomfortable, but in no apparent distress. (R. at 283.) By letter dated August 11, 2005, Dr. Taylor reported that Wright was permanently and completely disabled. (R. at 336.) In March 2006, Wright reported increased chest pain and depression. (R. at 335.) She reported that at times she felt lonely and depressed, and although Lexapro had exacerbated her symptoms, Klonopin and counseling had helped. (R. at 335.)

On September 19, 2006, Dr. Taylor completed an assessment indicating that Wright's abilities were consistent with less than a full range of sedentary work. (R. at 348-49.) Specifically, due to her history of breast cancer, Dr. Taylor concluded that Wright was able to lift items weighing less than two and a half pounds occasionally and no weight frequently, stand and walk for a total of less than two hours in an eight-hour workday, sit for a total of less than two hours in an eight-hour workday and

perform no postural activities. (R. at 348-49.) He further found that she had a limited ability to reach, to handle, to feel, to push and to pull and that she must avoid heights, moving machinery, temperature extremes and other environmental irritants. (R. at 349.)

On November 29, 2005, Dr. Michael J. Hartman, M.D., a state agency physician, indicated that Wright had the residual functional capacity to perform light work. (R. at 310-15.) No postural, manipulative, visual, communicative or environmental limitations were noted. (R. at 312-13.) This assessment was affirmed by Dr. Robert O. McGuffin, M.D., another state agency physician, on April 28, 2006. (R. at 315.)

On December 1, 2005, Julie Jennings, Ph.D., a state agency psychologist, completed a Psychiatric Review Technique form, ("PRTF"), indicating that Wright suffered from a nonsevere affective disorder. (R. at 316-28.) Jennings indicated that Wright had mild limitations in her ability to perform activities of daily living, in maintaining social functioning and in maintaining concentration, persistence or pace. (R. at 326.) Jennings indicated that Wright had not experienced episodes of decompensation. (R. at 326.) This assessment was affirmed by R. J. Milan Jr., Ph.D., another state agency psychologist, on April 28, 2006. (R. at 316.)

In January 2006, Wright sought treatment at Solutions Counseling, L.L.C., for complaints of feeling overwhelmed by concerns about her parents' poor health and her own history of breast cancer. (R. at 332-34.) She reported depression, anxiety, panic attacks, irritability and crying spells, but she denied that she was suicidal. (R. at 334.)

Susan G. Myers, L.C.S.W., a licensed clinical social worker, diagnosed Wright with severe, recurrent major depression and panic disorder without agoraphobia, and she assessed a Global Assessment of Functioning score,[6] ("GAF"), of 50.[7] (R. at 334.) Wright returned for monthly counseling sessions from February to June 2006. (R. at 329-31, 338-40.) In March 2006, Wright discontinued taking Paxil on her own. (R. at 330.) In June 2006, Myers reported that Wright had somewhat improved. (R. at 338.) There is no evidence of further treatment after June 2006.[8] (R. at 338.)

On September 19, 2006, Myers completed a mental assessment indicating that Wright had a limited, but satisfactory, ability to maintain personal appearance. (R. at 341-42.) Myers indicated that Wright had a seriously limited, but not precluded, ability to follow work rules, to relate to co-workers, to use judgment, to interact with supervisors, to function independently, to maintain attention and concentration, to understand, remember and carry out simple instructions and to relate predictably in social situations. (R. at 341-42.) She also indicated that Wright had no useful ability to deal with the public, to deal with work stresses, to understand, remember and carry out complex and detailed instructions and to demonstrate reliability. (R. at 341-42.)

---

[6]The GAF scale ranges from zero to 100 and "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS FOURTH EDITION, ("DSM-IV"), 32 (American Psychiatric Association 1994).

[7]A GAF score of 41-50 indicates that the individual has "[s]erious symptoms ... OR any serious impairment in social, occupational, or school functioning ...." DSM-IV at 32.

[8]Wright testified at her hearing that she had not seen Myers since July 2006 because she lost her insurance. (R. at 376-77.) However, the record does not contain a progress note dated July 2006.

*III. Analysis*

The Commissioner uses a five-step process in evaluating DIB and SSI claims. *See* 20 C.F.R. §§ 404.1520, 416.920 (2008); *see also Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983); *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). This process requires the Commissioner to consider, in order, whether a claimant 1) is working; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of a listed impairment; 4) can return to her past relevant work; and 5) if not, whether she can perform other work. *See* 20 C.F.R. §§ 404.1520, 416.920. If the Commissioner finds conclusively that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a) (2008).

Under this analysis, a claimant has the initial burden of showing that she is unable to return to her past relevant work because of her impairments. Once the claimant establishes a prima facie case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must then establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience and impairments, to perform alternative jobs that exist in the national economy. *See* 42 U.S.C.A. §§ 423(d)(2)(A), 1382c(a)(3)(A)-(B) (West 2003 & Supp. 2008); *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983); *Hall*, 658 F.2d at 264-65; *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980).

By decision dated November 7, 2006, the ALJ denied Wright's claims. (R. at 17-26.) The ALJ found that the medical evidence established that Wright had severe

impairments, namely status-post mastectomy, chest wall pain, gastroesophageal reflux disease, osteoarthritis, depression, anxiety and a history of breast cancer, but she found that Wright's impairments did not meet or medically equal the requirements of any impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 19, 21.) The ALJ also found that Wright had the residual functional capacity to perform simple light work that did not require repetitive use of her upper extremities or working with the public and which allowed good access to a bathroom for unscheduled bathroom breaks. (R. at 22.) Thus, the ALJ found that Wright could not perform her past relevant work. (R. at 24.) Based on Wright's age, education, work experience and residual functional capacity and the testimony of a vocational expert, the ALJ concluded that Wright could perform jobs existing in significant numbers in the national economy, including those of a file clerk, a general office clerk and an inspector. (R. at 25.) Therefore, the ALJ found that Wright was not under a disability as defined in the Act and that she was not eligible for benefits. (R. at 25-26.) *See* 20 C.F.R. §§ 404.1520(g), 416.920(g).

Wright argues that the ALJ erred by failing to give proper weight to the opinions of her treating sources, Dr. Taylor and Myers. (Plaintiff's Brief In Support Of Motion For Summary Judgment, ("Plaintiff's Brief"), at 8-13) Wright also argues that the ALJ erred by failing to sustain her burden of establishing that there is other work in the national economy that she could perform. (Plaintiff's Brief at 13-18.)

As stated above, the court's function in this case is limited to determining whether substantial evidence exists in the record to support the ALJ's findings. The court must not weigh the evidence, as this court lacks authority to substitute its

judgment for that of the Commissioner, provided his decision is supported by substantial evidence. *See Hays*, 907 F.2d at 1456. In determining whether substantial evidence supports the Commissioner's decision, the court also must consider whether the ALJ analyzed all of the relevant evidence and whether the ALJ sufficiently explained her findings and her rationale in crediting evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

Thus, it is the ALJ's responsibility to weigh the evidence, including the medical evidence, in order to resolve any conflicts which might appear therein. *See Hays,* 907 F.2d at 1456; *Taylor v. Weinberger*, 528 F.2d 1153, 1156 (4th Cir. 1975). Furthermore, while an ALJ may not reject medical evidence for no reason or for the wrong reason, *see King v. Califano*, 615 F.2d 1018, 1020 (4th Cir. 1980), an ALJ may, under the regulations, assign no or little weight to a medical opinion, even one from a treating source, based on the factors set forth at 20 C.F.R. §§ 404.1527(d), 416.927(d), if she sufficiently explains her rationale and if the record supports her findings.

Wright argues that the ALJ erred by failing to give full consideration to the findings of her treating sources, Dr. Taylor and Myers. (Plaintiff's Brief at 8-13.) Under 20 C.F.R. §§ 404.1527(d), 416.927(d), the ALJ must give controlling weight to a treating source's opinion if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence of record. In this case, the ALJ found that Wright could perform unskilled, light work that did not require repetitive use of her upper extremities or interaction with the public, included good access to a bathroom for unscheduled bathroom breaks and required the performance of only simple, noncomplex tasks in order to

-12-

accommodate moderate limitations in maintaining concentration, persistence and pace. (R. at 22.) Based on my review of the evidence, I find that substantial evidence exists to support the ALJ's finding. Wright's primary condition is a history of breast cancer, which appears to have been cured by bilateral mastectomy in November 2004 and treatment with chemotherapy and radiation. (R. at 195-96.) Dr. Sam W. Huddleston IV, M.D., consistently reported in 2005 that Wright was doing well following both initial and reconstructive surgery. (R. at 306-09.) A bone scan in June 2005 was normal. (R. at 172.) While Wright complained of aches and pains in her bones to Dr. Taylor, he considered her pain to be a result of chemotherapy. (R. at 288.) This opinion is consistent with that of Dr. David P. Miller, M.D., who, in January 2005, indicated that Wright experienced bone pain from treatment with Neulasta, which was prescribed with chemotherapy. (R. at 154.) Dr. Taylor prescribed only conservative treatment for Wright's complaints of pain. (R. at 294.) In addition, even while Wright continued to complain of bone pain to Dr. Taylor, progress notes from her surgeon for the same time period show that she was doing well and progressing nicely. (R. at 284, 307.) Furthermore, Wright was prescribed pain medication and reported that her pain had improved. (R. at 288.) The ALJ considered this evidence, as well as Dr. Hartman's opinion that Wright could perform light work. (R. at 22-23, 310-15.)

Wright has a limited history of mental health treatment consisting primarily of outpatient counseling for six months in 2006. (R. at 329-34, 338-40.) Wright was treated monthly, and no recommendation for more aggressive treatment was made. In fact, Wright discontinued her own medication three months after beginning treatment and appeared not to have continued treatment beyond June 2006. (R. at 330-31, 338.) In March 2006, Wright reported to Dr. Taylor that Klonopin and counseling had

helped with her symptoms of depression. (R. at 335.) "If a symptom can be reasonably controlled by medication or treatment, it is not disabling." *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986). Based on this, I find that substantial evidence exists to support the ALJ's finding with regard to Wright's residual functional capacity.

Wright also argues that the ALJ erred by finding that a significant number of jobs existed that she could perform. (Plaintiff's Brief 13-18.) Based on my review of the record, I agree. The ALJ found that Wright had the residual functional capacity to perform simple light work that did not require repetitive use of her upper extremities or working with the public and which allowed good access to a bathroom for unscheduled bathroom breaks. (R. at 22.) However, the hypothetical presented to the vocational expert limited Wright to only occasional use of her right upper extremity. (R. at 396-97.) The hypothetical also included the need for "good access to a bathroom," without mention of the need to have unscheduled bathroom breaks. (R. at 396.) Thus, the hypotheticals presented to the vocational expert do not accurately set forth the ALJ's finding. (R. at 396-401.) That being the case, the vocational expert's testimony does not provide substantial support for the ALJ's finding that other jobs exist that Wright could perform. *See Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989).

*IV. Conclusion*

For the foregoing reasons, Wright's motion for summary judgment will be denied, the Commissioner's motion for summary judgment will be denied, the

-14-

Commissioner's decision denying benefits will be vacated, and the case will be remanded to the Commissioner for further consideration consistent with this Memorandum Opinion.

An appropriate order will be entered.

DATED:   This 30th day of September 2008.

/s/ *Pamela Meade Sargent*
       UNITED STATES MAGISTRATE JUDGE